```
                UNITED STATES DISTRICT COURT                FILED
                NORTHERN DISTRICT OF ALABAMA             97 JUL 23 AM 11: 24
                    NORTHEASTERN DIVISION
                                                         U.S. DISTRICT COURT
KRISTIE WOODS and            )                            N.D. OF ALABAMA
JENNIFER MALONE,             )
                             )
       Plaintiffs,           )
                             )
vs.                          )   CIVIL ACTION No. CV-95-S-2791-NE
                             )
JMBL, INC., and/or MADISON   )
FOODLAND INC.,               )                           ENTERED
                             )
       Defendant.            )                          JUL 23 1997
```

### MEMORANDUM OPINION

This action is before the court on plaintiffs' motion to strike, and defendant's motion for summary judgment. Plaintiffs allege they were discriminated against on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq., and, 42 U.S.C. § 1981. Upon consideration of the motions, pleadings, briefs, and evidentiary submissions, this court concludes that plaintiffs' motion is due to be granted, and defendant's motion is due to be denied.

### I. MOTION TO STRIKE

Plaintiffs move this court to strike defendant's reply brief and evidentiary submission in support thereof. After defendant filed its motion for summary judgment, this court entered its submission order, which made no provision for reply briefs. No such provision was intended.

After the deadline for filing materials expired, this court granted plaintiffs leave to file a supplemental brief and evidentiary materials. In response to plaintiffs' supplemental

filings, defendant filed a reply brief and additional evidentiary materials, but without first seeking leave of court and beyond the deadline set in this court's submission order. Accordingly, plaintiffs' motion to strike is due to be granted, and this court will not consider those materials.

## II. MOTION FOR SUMMARY JUDGMENT

Plaintiffs Kristie Woods and Jennifer Malone allege they submitted applications for employment as cashiers with Foodland Grocery Store in Madison, Alabama ("Madison Foodland") on February 25, 1994, but were not hired because of their race: African-American. (Plaintiffs' Amended Complaint at ¶8.) Madison Foodland is owned by JMBL, Inc. (Nichols Deposition, at 8.)

### A. Plaintiffs' Claims

#### 1. Applications of February 25, 1994

> Defendant does not have a copy or a record of either of the applications Plaintiffs allege to have filled out on or about February 25, 1994. However, for purposes of summary judgment, its [sic] is presumed that the Plaintiffs did fill out applications for employment on that date.

(Defendant's Brief, at 2 n.1.) John Nichols, Madison Foodland's manager and decision maker at the time of alleged discrimination, testified he routinely destroyed six to eight month old applications of persons not hired by Madison Foodland.[1] (Nichols Deposition, at 37-38.) That practice ceased in August of 1994,

---

[1] That testimony creates an inference that plaintiffs' February 25, 1994 applications were destroyed. The record, however, contains numerous applications from 1993 and early 1994 for individuals who are not listed on Madison Foodland's employment roster, and apparently were not hired. (See also the 1992 application of Heather M. Lee, discussed at page 9 infra.) Neither party explains why those applications were not destroyed.

2

shortly after plaintiffs filed their EEOC charges. *Id.* Apparently, defendant plans to argue at trial that plaintiffs never applied with Madison Foodland.

Nevertheless, in deposition, plaintiffs testified about the contents of their respective applications for employment, and the circumstances under which each allegedly was submitted. For purposes of summary judgment, that testimony is sufficient to establish that Madison Foodland received the applications, and to compare plaintiffs' alleged applications with other Madison Foodland employees.

### 2. Applications after February 25, 1994

In their brief opposing defendant's motion for summary judgment, plaintiffs attempt to claim discrimination related to applications allegedly submitted to Madison Foodland as late as May, 1994.[2] (Plaintiffs' Brief, at 5, 25, 30.) Count I of plaintiffs' amended complaint,[3] however, only alleges "that on or about February 25, 1994, plaintiffs made application for employment with the defendant for the position of cashier," and "that the defendant's conduct in refusing to offer them employment

---

[2] Woods testified she submitted one application in March of 1994, and two applications in April of 1994. (Woods Deposition, at 107-09.) Malone testified she submitted two additional applications in March of 1994. (Malone Deposition, at 16, 17, 46.) Defendant also possesses one application from Malone dated May 2, 1995. Malone testified that she applied on that occasion because defendant had hired other African-American cashiers. She was interviewed and offered a job after submitting the application, but never called to begin work. (Malone Deposition, at 75-77.)

[3] Defendant was originally named as Madison Foodland, Inc. On March 26, 1996, the complaint was amended to "reflect the appropriate name of the corporate entity," Madison Foodland and/or JMBL, Inc., and to change the date of alleged discrimination from "February 25, 1995" to "February 25, 1994."

3

constituted discrimination." (Amended Complaint at ¶¶ 8, 12.) Plaintiffs' complaint contains no other specific or general allegations of discrimination.

This court will not consider plaintiffs' additional "claims" for discrimination, if that is what they are intended to be, because they are not contained in the complaint, and are not properly before the court. Furthermore, this court will not grant leave to amend the complaint, if such a motion be filed, because of plaintiffs' persistent delay in asserting those claims.

> Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, undue delay may clearly support such denial. Given the long history of this case, and the opportunities for [plaintiff] to attempt to cure the deficiencies in the complaint, [his] proposed amendment was clearly untimely; the district court did not abuse its discretion by refusing to allow it.

*Hester v. International Union of Operating Engineers*, 941 F.2d 1574, 1578-79 (11th Cir. 1991)(citations omitted).

Plaintiffs knew of their additional claims for discrimination for over two and a half years, but persistently refused to raise them until this point in litigation. Four months expired between plaintiffs' last application date, and the filing of their EEOC charges in August of 1994, but they only asserted claims related to the original February 25, 1994 applications. Another year and two months expired before plaintiffs filed their complaint on October 30, 1995, but they still only claimed discrimination arising from the "February 25, 199<u>5</u>" applications.[4]

---

[^1]: The complaint was later amended reflect the proper application date of February 25, 1994.

4

In plaintiff Woods' deposition on March 13, 1996, counsel for both parties even engaged in the following exchange:

> Q. [By Defendant's counsel, Mr. Smith] Ms. Woods, let me explain something to you. This whole case concerns an application you filled out —
>
> A. Yes.
>
> Q. — February 25, 1994. It does not concern any times you filled out applications.
>
> MR. PADGETT [Plaintiffs' counsel]: I think that we would object to that. That is not an accurate statement of the law. If there is a discriminatory event that requires — it requires within 180 days, then all of these other applications would be relevant.
>
> MR. SMITH: They may be relevant, but they are not the basis of this lawsuit.
>
> MR. PADGETT: **I know**. But I want it to be absolutely clear that she is testifying she called once about that application, but I don't want any inference that that's the only application.
>
> MR. SMITH: I am not concerned about other applications. I'm concerned about this one.

(Woods Deposition, at 61 (emphasis supplied).)

After Woods' deposition, plaintiffs amended their complaint to change the date of the alleged applications from "February 25, 199**5**" to "February 25, 199**4**." Despite the quoted debate between counsel, the complaint was **not** amended to allege discrimination related to any other applications. In fact, plaintiffs waited another seven months before raising those claims in opposition to summary judgment. Thus, plaintiffs' "undue delay" in asserting their additional claims is sufficient grounds to deny leave to amend.

5

### B.  Madison Foodland's Application Policy

According to John Maples, JMBL Inc.'s Human Resources Director, Madison Foodland considers "routine" applications for a period of thirty days, but may consider applicants with "specialized skills" (e.g., meat cutting experience) for longer periods. (Maples Deposition, at 53-56.) After that time, an individual presumably must submit a new application in order to be considered for an opening.

Maples' assertions about standard operating procedures were contradicted by Madison Foodland's manager. John Nichols testified that he would consider applications "[n]ot more than forty-five, fifty days" from the date of receipt. (Nichols Deposition, at 35.) He made no distinction between consideration of "routine" and skilled applicants. Thus, for purposes of summary judgment, this court will review all hiring decisions of Madison Foodland occurring within 50 days of plaintiffs' February 25, 1994 applications.

### C.  Plaintiffs' *Prima Facie* Case and Knowledge Requirement

Defendant asserts plaintiffs should be required to prove that Madison Foodland's decision maker, John Nichols, had knowledge of plaintiffs' race before they state a *prima facie* case of discrimination. (Defendant's Brief, at 6-9.) The Eleventh Circuit has not explicitly stated that knowledge of race is a part of the *prima facie* case. Knowledge is an inferred requirement of a *prima facie* case, however, because plaintiffs bear the burden of proving

6

<u>intentional</u> discrimination. *Jones v. Gerwins*, 874 F.2d 1534, 1539 (11th Cir. 1989).

Woods and Malone submitted affidavits asserting that they spoke in person with an individual claiming to be the Madison Foodland Manager. (Woods Affidavit, at 2; Malone Affidavit, at 2.) Woods identified that person as "John," but could not recall his last name. (Woods Deposition at 62.) Malone was with Woods when she spoke to the manager. (Woods Deposition at 58-59.) Thus, even if knowledge is required, plaintiffs can make the required showing.

D.  **Madison Foodland's Non-discriminatory Reason**

Madison Foodland's non-discriminatory reason for its failure to hire either plaintiff is that a more qualified employee was hired during the 30 day period plaintiffs' applications were allegedly available for consideration: February 25 to March 28, 1994. (Defendant's Brief, at 11-12.)

Nichols claims that he hired only one cashier, Beth A. Beard, during that time, and she had qualifications superior to both plaintiffs. (Nichols affidavit, at ¶6.) Nichols' based his assessment of Beard's qualifications on:

> her experience as a cashier at other grocery stores and
> . . . the responsibility showed through her full-time job
> as a child care provider. She was seeking a position as
> a part-time cashier on nights and weekends, which fit the
> store's needs at that time.

(Nichols Affidavit, at ¶6.) In contrast, plaintiff Kristie Woods had only one year of grocery store cashier experience. (Woods Deposition, at 15, 20.) She sought part-time employment on days, nights, or weekends. (*Id.*, at 53.) Plaintiff Jennifer Malone never

7

worked in a grocery store, and her cashier experience was limited to working at a McDonald's restaurant. (Malone Deposition, at 21.) She applied for either full- or part-time work, and was available "any time." (*Id.*, at 15, 41.)

**B.   Pretext**

Plaintiffs claim defendant considered applications for longer than 30 days, and hired less qualified applicants during the actual period. Applying the 50 day period testified to by John Nichols, plaintiffs' applications should have been considered from February 25 to April 16, 1994. A comparison of applications with defendant's employment roster[5] reveals at least one, and possibly two white females[6] who applied for cashier positions and were hired within 50 days of February 25, 1994.[7]

Jennifer D. Day applied for a cashier position on February 18, 1994 (Plaintiffs' Evidentiary Submission: Day Application), and was hired as a part-time employee on March 7, 1994, ten days after plaintiffs applied. (Plaintiffs' Evidentiary Submission: Employment

---

[5] As part of their evidentiary submissions, plaintiffs offered Madison Foodland's "Employment Roster." That document lists the date that each employee "STARTED." While "start date" could be different from "hire date," defendant's counsel has previously confirmed that the "STARTED" date on the roster is the date of hire. (Plaintiff's Evidentiary Submission: Letter of defendant's counsel dated August 5, 1996)("We have already provided you with a work force roster showing employee's name, <u>date of hire</u>, date of termination (when applicable) and race")(emphasis added).

[6] Defendant's employment roster contains an EEOC code for each employee. Defendant admits that Beth A. Beard is a white female. Beard's EEOC code is identical to the two other employees.

[7] It is unclear whether those employees were hired as cashiers. The positions actually occupied, however, are irrelevant because those employees, like plaintiffs, only applied for a cashier positions.

8

Roster.) Day had no experience as a grocery store cashier, but listed three years experience at two restaurants, and one year of experience as a convenience store cashier. (Plaintiff's Evidentiary Submission: Day Application.) She requested full-time work on days, nights, or weekends. *Id.* While her application was submitted one week prior to plaintiffs', she was hired within the disputed time frame. Thus, the credibility of Nichols' statement that he "hired only one person as a part-time cashier" during the alleged thirty day period (Nichols Affidavit, at ¶6) is called into question.

Heather M. Lee applied for a cashier position on **March 18, 1992**, (Plaintiffs' Evidentiary Submission: Lee Application), and was hired as a part-time employee on **March 31, 1994**,[8] 34 days after plaintiffs submitted their applications. (Plaintiffs' Evidentiary Submission: Employment Roster.) Lee had no grocery store cashier experience, and only five months experience at a Subway restaurant. (Plaintiffs' Evidentiary Submission: Lee Application.) She sought part-time work on nights and weekends.

Defendant's claim that it hired only one person during the relevant period, and its failure to explain why plaintiffs were not considered for the positions given to Day and Lee, casts "sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the

---

[8] There are several possible explanations for the two year discrepancy between the application and hire dates. Lee could have re-applied at a later date, or signed the application incorrectly. Madison Foodland could have entered her hire date incorrectly into its computer. It is defendant's burden, however, to explain Lee's hire date.

employer's proffered 'legitimate reasons were not actually what motivated its conduct.'"  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)(quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).  Consequently, defendant's motion for summary judgment is due to be denied.

### III. CONCLUSION

For the forgoing reasons, plaintiffs' motion to strike is due to be granted, and defendant's motion for summary judgment is due to be denied.  An order consistent with this memorandum opinion shall enter contemporaneously herewith.

DONE this 23rd day of July, 1997.

_____
United States District Judge

10